MINNIE B. DAVID *v.* CHARLES DAVID ET AL.
[No. 48, October Term, 1931.]

*Decided January 13th, 1932.*

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward L. Ward,* for the appellant.

*Walter L. Clark* and *Clater W. Smith,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appellant filed in the Baltimore City Court a declaration against Charles David and Samuel David, co-partners trading as Union Wall Paper Company, in which she alleged that the defendants operated at 7-9 E. Lombard Street in Baltimore City a wholesale paper business, and that on August 28th, 1929, while she was lawfully on their premises, for business purposes and in the exercise of ordinary care, she stepped and fell in an open elevator shaft which the defendants had negligently left unguarded, unlighted and without "any warning or sign of any kind," and that in consequence of her fall she was severely injured. To that declaration the defendants filed the general issue plea and a special plea, in which they stated: "That at the time of the commission of the alleged wrongs mentioned in the declaration and for a long time prior thereto the plaintiff was and has ever since continued to be, and still is the lawful wife of the defendant, Samuel David, and that the defendant, Samuel David, and the plaintiff at the time of the commission of said alleged wrongs and for a long time prior thereto were and have ever since continued to be and are now living together as husband and wife in lawful wedlock." Plaintiff's demurrer to that plea was overruled, and the plaintiff failing to reply within the time fixed by the court, a judgment of *non pros,* with costs to the defendants, was entered on May 12, 1931.

This appeal from that judgment presents two questions, one, whether the special plea, which was not verified by affidavit, was in abatement or in bar, and two, whether a married woman is entitled to maintain an action against a partnership for damages resulting from injuries caused by defendants' negligence, when, at the time of the negligent act, her husband was a member of the partnership.

534

The distinction between a plea in abatement and a plea in bar is that the former delays the suit, while the latter destroys the cause of action. It is said, generally, that a plea in abatement, to be good, must tender a better writ, but a plea in bar denies that the writ should have issued at all. A plea, therefore, which sets up matter which has in law merely the effect of postponing the enforcement of the right alleged in the declaration is necessarily in abatement, because it does not destroy, but only suspends the right of action, but one which alleges facts which negative the existence of any right of action must be in bar. *Bullen & Leake Prec. of Pleading,* 468 *et seq.*; *Chitty on Pleading,** p. 368 *et seq.*; *Tidd's Practice,** 637, 638.

In examining the nature of the plea in this case, it may be noted that it sets up the coverture of the plaintiff as a defense in three aspects: (1) Coverture prior to the tort; (2) coverture at the time of the tort, and (3) coverture at the time of the suit. But if coverture at the time of the tort conclusively negatived the existence of any actionable quality in the tort, the allegations of coverture before and since the tort, which sound in abatement, are mere surplusage, and may be disregarded. So that the test of the nature of the plea is identical with the second question stated, which is whether if, at the time of the tort, the plaintiff's husband was a member of the partnership charged with it, any cause of action accrued to her in consequence of the injuries she suffered as a result of defendants' negligence.

The rule at common law is that a married woman cannot maintain an action against her husband for injuries caused by his negligent or tortious act. 30 *C. J., "Husband and Wife,"* secs. 317, 675. The reason usually given for that rule is the presumed legal identity of the husband and wife [*Ibid; Philips v. Barnet* (1876), 1 Q. B. D. 436], and some confusion has arisen from the adoption of legislation which has had the effect of partially dissipating that fiction, by permitting suits between husband and wife to enforce contractual liabilities, by according to each the same rights and privileges in respect to property they would have if unmar-

ried, by permitting the wife to carry on a trade or business, and to receive and enjoy her earnings from any source as freely as if single, and to sue in her own name for torts against her. Coincident with the widening scope and extent of such legislation, there has been a determined effort to have it construed so as to permit actions between husband and wife for damages resulting from some wrongful or negligent act of the defendant, and in some jurisdictions it has been so construed (*Johnson v. Johnson,* 201 Ala. 41, 77 So. 335; *Fitzpatrick v. Owens,* 124 Ark. 167, 186 S. W. 832, 187 S. W. 460; *Brown v. Brown,* 88 Conn. 42, 89 A. 889; *Gilman v. Gilman,* 78 N. H. 4, 95 A. 657; *Fiedler v. Fiedler,* 42 Okl. 124, 140 P. 1022), usually on the ground that, with the disappearance of the fiction of identity, the reason for the rule denying persons in the relation of husband and wife the right to sue each other in tort ceased. But that view has been rejected by what seems to be the weight of authority, not only upon the technical and artificial ground that the identity of husband and wife persists in its original vigor until it has been completely dissolved by express legislative mandate, in respect to all matters which the Legislature has not expressly included within the meaning of the emancipatory statutes, but upon the broader sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust, and would be inconsistent with the common welfare. *Thompson v. Thompson,* 218 U. S. 616, 618, 31 S. Ct. 111, 113, 54 L. Ed. 1180; 30 *C. J.* 955; supplement vol. 4, *Rose's Notes,* page 849. The question has, however, been definitely put at rest in this state by the decision in *Furstenburg v. Furstenburg,* 152 Md. 247, 252, 136 A. 534, 536, in which the court, through Judge Urner, after construing Code, art. 45, secs. 5 and 20, said: "It appears to have been the purpose of the Act of 1898 to give the wife a remedy, by her suit alone, for actionable wrongs which could not theretofore be thus independently redressed. The intention to create, as between husband and wife, personal causes of action which did not exist before the act is not, in our opinion, expressed by its terms." So

that, in this state, in an action by a married woman against her husband, based upon loss or damage occasioned by his negligent or wrongful act, her coverture at the time of the tort is a complete bar to the action, not because she was a married woman at the time of the tort, but because she was at that time married to the defendant; the effect of the Married Woman's Acts in this state, as construed in *Furstenburg v. Furstenburg, supra,* being merely to remove the disability which at common law prevented a married woman from suing in tort in her own name, but not to create in such cases as this a cause of action where none existed before.

Proceeding upon that principle, and assuming that the appellant could not have maintained this action against her husband had he been the sole defendant, the single remaining point is whether she can maintain it against a partnership of which he was a member at the time of the tort.

The reasons advanced in support of the wife's right to recover are: (1) That the defense of coverture is personal to the husband, and not open to the partnership, and (2) that the partnership is a distinct and independent legal entity. These two propositions are to an extent interdependent, for unless the partnership is a distinct entity, separate and apart from the husband, a sufficient answer to the first proposition would be that in this case the husband has himself alleged the coverture of the plaintiff as a defense to the action, for he, as one of the partners, joined in the plea. It has been held that, in an action against joint defendants in which one is entitled to a defense personal to him, he alone can plead it (47 *C. J.* 989), but in view of the modern development of the law, especially in the field of indemnity insurance, it may well be doubted whether that rule is of universal application. But whether it is so need not be decided in this case, for here the defense is not that of disability arising from coverture to sue on a cause of action which is not disputed, and which might be regarded as personal to the husband, but that no cause of action ever existed. That defense rests upon the proposition that the same reasons which preclude the wife from maintaining an action in tort against her husband also

apply to an action in tort by a wife against a partnership of which he is a member. The appellant's reply to that contention is that a partnership is a distinct legal entity which has an existence separate and apart from that of its members, that a suit against the partnership as such is not a suit against the individuals who compose it as individuals, but as representing the partnership, and that therefore the reasons which deny a wife the right to sue her husband in tort do not apply to such an action brought by her against a partnership, although her husband is a member of it.

It cannot be denied that in some respects and for some purposes a partnership may be regarded as a legal entity, and it has been so held by this court as recently as *McLane v. State Tax Commission,* 156 Md. 133, 143 A. 656. But it is equally well settled that it is not such an entity as is a natural person or a corporation, and that its status as an independent entity is limited and incomplete. A corporation may exist without stockholders (*Fletcher, Cyc. Corp.,* secs. 184, 185, 186; *Hammond v. Straus,* 53 Md. 1), but a partnership cannot exist without partners; title to corporate property is in the corporation, and its stockholders as such have no interest in it, but the title to partnership property is in the partners as co-owners (Code, art. 73A, sec. 25); a corporation is not bound by the admissions of a stockholder unless as its duly authorized agent, while a partnership is bound by the admissions made by any partner concerning partnership affairs within the scope of his authority, as defined by the Uniform Partnership Act (*Ibid.,* sec. 11); a corporation is not responsible for the torts of its stockholders unless as its duly authorized agents, nor are its stockholders answerable for its torts, whereas a partnership is liable for the wrongful act of any partner done in the course of the partnership business (*Ibid.,* sec. 13); and each partner is liable jointly and severally for everything chargeable to the partnership in consequence of the wrongful act of any partner done in the ordinary course of the partnership business or with the authority of his co-partners (*Ibid.,* sec. 15; 47 *C. J.* 884, 907); the continued existence of a corporation is not affected by the death of a

stockholder, while the death of a partner dissolves the partnership (*Ibid.*, sec. 31). But without further elaborating the subject, it is sufficient to say that, for the purposes of this case, the vital difference between a partnership and a legal entity complete in itself, such as a natural person or a corporation, is that each partner is severally liable for the wrongful acts and omissions of the partnership, and that he is bound to contribute to his copartners his proportionate share of any sum advanced by them to satisfy an enforceable demand against it. Code, art. 73A, sec. 18; *Rowley on Partnership*, secs. 364, 497.

In view of that liability, the reasons advanced in *Fursten burg v. Furstenburg, supra,* and *Thompson v. Thompson, supra,* for denying a married woman the right to maintain an action in tort against her husband as an individual apply with equal force to an action in tort against a partnership of which he is a member. The only possible difference is that a judgment against him as an individual would affect only his property, while a judgment against a partnership of which he was a member might be executed against the partnership property, against his property, or against the property of any one or more of his co-partners, but if satisfied through payment by the partnership or advances by his co-partner or co-partners, or from the sale of property respectively owned by the partnership or the co-partners, individually, he could, nevertheless, be compelled to contribute his proportionate share of the loss resulting from the judgment. The same dictates of public policy which have been held to preclude persons who stand in the relation of husband and wife from suing each other individually in tort would also prevent either of them from maintaining such an action against a partnership of which the other was a member, nor is the vestigial legal identity of the husband and wife remaining after the Married Women's Act, which the court in *Furstenburg v. Furstenburg, supra,* recognized as sufficient to prevent an action in tort by a wife against her husband, affected by the fact that the husband is sued only as a member of a partnership. In speaking of the policy of the law in respect to

such cases, it was said in *Abbott v. Abbott,* 67 Me. 304, an action for assault and battery brought by a divorced wife against her former husband: "There is not only no civil remedy, but there is no civil right, during coverture, to be redressed at any time. There is, therefore, nothing to be suspended. Divorce cannot make that a cause of action which was not a cause of action before divorce. The legal character of an act of violence by husband upon wife, and of the consequences that flow from it, is fixed by the condition of the parties at the time the act is done. If there be no cause of action at the time, there never can be any. * * * So to speak, marriage acts as a perpetually operating discharge of all wrongs between man and wife, committed by one upon the other. As said by Settle, J., in *State v. Oliver,* 70 N. C. 60, 'it is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive.' We are not convinced that it is desirable to have the law as the plaintiff contends it to be. There is no necessity for it. Practically, the married woman has remedy enough. The criminal courts are open to her. She has the privilege of the writ of habeas corpus, if unlawfully restrained. As a last resort, if need be, she can prosecute at her husband's expense a suit for divorce. If a divorce is decreed to her, she has dower in all his estate, and all her needs and all her causes of complaint, including any cruelties suffered, can be considered by the court, and compensation in the nature of alimony allowed for them. In this way, all matters would be settled in one suit as a finality. It would be a poor policy for the law to grant the remedy asked for in this case. If such a cause of action exists, others do. If the wife can sue the husband, he can sue her. If an assault was actionable, then would slander and libel and other torts be. Instead of settling, a divorce would very much unsettle all matters between married parties. The private matters of the whole period of married existence might be exposed by suits. The statute of limitations could not cut off actions, because during coverture the statute would not run. With divorces as common as they are now-a-days, there would be new harvests of litiga-

tion. If such a precedent was permitted, we do not see why any wife surviving the husband could not maintain a suit against his executors or administrators for defamation, or cruelty, or assault, or deprivations that she may have wrongfully suffered at the hands of the husband; and this would add a new method by which estates could be plundered. We believe the rule, which forbids all such opportunities for law suits and speculations, to be wise and salutary and to stand on the solid foundations of the law." And in *Thompson v. Thompson, supra,* in construing the effect of a statute, authorizing married women to sue separately for torts against them, upon the common-law rule that a wife could not sue her husband in tort, it was said: "We do not believe it was the intention of Congress, in the enactment of the District of Columbia Code, to revolutionize the law governing the relation of husband and wife as between themselves." And much the same conclusion was reached in a number of cases collected in 43 *Harv. Law Rev.* 1043, notes 61-66.

The considerations upon which the courts relied for the conclusions reached in those cases which involved the husband in his individual capacity apply with no less force to cases against a partnership of which he is a member. For, in each instance, the consequence of the suit to the husband, while differing possibly in degree, would be the same in kind, and in either case the effect of the suit upon the relations between husband and wife, whether he be sued as an individual or as a member of a partnership, cannot readily be distinguished, and in both instances the incident of identity is present, whether the defendant is sued as an individual or as a partner.

A different conclusion was reached in *Wait v. Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, upon somewhat similar facts, but, as pointed out by the learned judge who tried this case below, that decision was based upon a finding that in that jurisdiction (Wisconsin) a married woman could sue her husband in tort, which is contrary to the conclusion reached in *Furstenburg v. Furstenburg, supra,* and for that reason the case is not in point.

It is apparent from what has been said that, in our opinion, this case is controlled by the *Furstenburg* case, *supra*, and, for the reasons stated, we fully concur in the conclusions of the trial judge, as stated in an exhaustive memorandum filed in the case, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*