X-L LIQUORS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FRED C. TAYLOR, CLARENCE W. TAYLOR, *ET AL.*, INDIVIDUALLY AND TRADING AS THE TAYLOR WINE COMPANY, DEFENDANTS-APPELLANTS.

Argued January 17, 1955—Decided February 14, 1955.

445

446

*Mr. Jack Solomon* argued the cause for appellants.

*Mr. Bernard Shurkin* argued the cause for respondent.

The opinion of the court was delivered by

JACOBS, J. The defendants moved to dismiss the plaintiff's complaint on the ground that summons was not issued in time or properly served upon them; the motion was denied by the Law Division and appeal to the Appellate Division was taken under *R. R.* 2 :2–3(*a*)(3). We certified on our own motion. *R. R.* 1 :10–1.

The defendants named in the complaint are Fred C. Taylor, Clarence W. Taylor, Greyton H. Taylor, Flora T. Keeler and Lucy T. Zimmer, individually and trading as The Taylor Wine Company. They are partners engaged in the wine business in the State of New York where they all reside. They applied to the New Jersey Division of Alcoholic Beverage Control for a wine wholesale license; in their application they stated that no licensed premises would be maintained by them in New Jersey and designated Bernard Best, 428 Leslie Street, Newark 8, New Jersey as the "authorized agent" upon whom "service of process may be made." They received a license and sold wine to New Jersey retail licensees, including the plaintiff, X-L Liquors, Inc., a corporation of New Jersey having its principal place of business in Newark. Thereafter they apparently served and filed with the Division, pursuant to its Regulations No. 39, a notice that the plaintiff had defaulted in making payment for wine it had purchased and the plaintiff was consequently placed on the Division's "Official Default List." The plaintiff alleged in its complaint that the notice was served and filed "without warrant or cause, negligently and maliciously"; that the matters published or caused to be published by the

defendants were "defamatory of plaintiff's business practices, credit standing, and business reputation"; and that it had consequently suffered loss and expense for which it demanded "exemplary and compensatory damages." The complaint was filed on April 7, 1953; service of summons and complaint attached was effected by the sheriff's office on April 15, 1953 by leaving a single copy at the dwelling house of Bernard Best at 428 Leslie Street, Newark. The copy of the summons and complaint was presumably forwarded without delay to New York counsel for The Taylor Wine Company; thereafter there was a motion to set aside the service on the ground, *inter alia,* that it was not made by delivery to Bernard Best personally. In *X-L Liquors, Inc. v. Taylor,* 29 *N. J. Super.* 486 (*App. Div.* 1954), the Appellate Division held this ground to be valid and annulled the service; the court's opinion was filed on February 5, 1954 and, under *R. R.* 1:9–1, its mandate issued ten days thereafter.

Under date of March 11, 1954 the plaintiff forwarded to the sheriff's office six copies of summons with complaint attached and on March 15, 1954 they were all served on Bernard Best personally. Thereafter the defendants moved to dismiss the complaint primarily on the ground that the court had "no jurisdiction over the defendants or any of them"; they also placed reliance on the point that the new summons was not served in due time after the filing of the complaint or the issuance of the mandate. See *R. R.* 4:4–1; *R. R.* 4:42–2(*a*). The Law Division denied the motion and entered an order settling the record under *R. R.* 1:6–3. In support of their appeal the defendants urge: (1) that their designation of Best as authorized agent for the service of process was designed solely for the benefit of the Division and did not constitute him "an agent for the service of process in civil matters"; (2) that if the designation is held to be available in civil matters "it is an illegal and invalid exercise of the rule making power"; (3) that the summons "did not issue within ten days after the filing of the complaint" and its service was therefore not sustainable; and (4) that the "service attempted upon a partnership as such is void."

The exceptional nature of the liquor business has often been commented upon by our courts; in *Paul v. Gloucester County*, 50 *N. J. L.* 585, 595 (*E. & A.* 1888), Justice Van Syckel noted that "It is a subject by itself, to the treatment of which all the analogies of the law appropriate to other topics cannot be applied." See also *Mazza v. Cavicchia*, 15 *N. J.* 498, 505 (1954); *In re Schneider*, 12 *N. J. Super.* 449, 456 (*App. Div.* 1951). Its inherent social dangers are evident and the State may rightly prohibit it or permit it to continue under very severe restrictions. See *Ziffrin, Inc. v. Reeves*, 308 *U. S.* 132, 138, 60 *S. Ct.* 163, 84 *L. Ed.* 128, 135 (1939); *Crowley v. Christensen*, 137 *U. S.* 86, 91, 11 *S. Ct.* 13, 34 *L. Ed.* 620, 624 (1890). After federal prohibition had failed, our Legislature created (*L.* 1933, *c.* 436; *R. S.* 33:1–1 *et seq.*) the Department of Alcoholic Beverage Control and wisely delegated to its commissioner comprehensive powers to regulate the liquor traffic in all of its aspects. Thus in *R. S.* 33:1–23 it vested in the commissioner the duty of governing the Department with authority to adopt "procedures and methods designed to insure the fair, impartial, stringent and comprehensive administration" of the act; in *R. S.* 33:1–25 it directed that applicants for licenses "shall answer such questions as may be asked and make such declarations as shall be required by the form of application for license as may be promulgated by the commissioner from time to time"; in *R. S.* 33:1–39 it empowered the commissioner to make general rules on many stated subjects including "all forms necessary or convenient" and on "such other matters whatsoever as are or may become necessary in the fair, impartial, stringent and comprehensive administration" of the act; and in *R. S.* 33:1–73 it directed that the act shall be liberally construed.

The commissioner and his successors adopted many regulations pertaining to liquor licensees and their business; these regulations were sustained as being reasonably related to the broad purposes of the act even where they dealt with subjects not specifically mentioned therein. Thus in *Gaine v. Burnett*, 122 *N. J. L.* 39 (*Sup. Ct.* 1939), affirmed 123

*N. J. L.* 317 (*E. & A.* 1939), price-fixing was held to fall within the general rule-making power of *R. S.* 33:1–39; in *Franklin Stores Co. v. Burnett*, 120 *N. J. L.* 596 (*Sup. Ct.* 1938), a rule prohibiting possession by licensees of certain articles designed for the manufacture of "home-made" liquor was held to come within *R. S.* 33:1–39; in *Greenspan v. Division of Alcoholic Beverage Control*, 12 *N. J.* 456 (1953), a rule providing that any transfer or renewal shall be subject to the outcome of any appeal from the issuance of the original license was held to come within *R. S.* 33:1–39; and in *Mazza v. Cavicchia, supra*, a rule providing that licensees shall be responsible for violations committed by their employees was held to come within *R. S.* 33:1–39. See also *Passarella v. Board of Commissioners*, 1 *N. J. Super.* 313 (*App. Div.* 1949), where the Appellate Division found that although the act made no "specific reference to the issuance or transfer of liquor licenses to vacant land subject to the erection and construction of a proper building," the commissioner could adopt appropriate rules on the subject within the sweeping regulatory authority afforded by *R. S.* 33:1–23 and *R. S.* 33:1–39.

The Alcoholic Beverage Control Act (*L.* 1933, *c.* 436; *R. S.* 33:1–1 *et seq.*) contained no specific reference to applicants who did not propose to maintain licensed premises in New Jersey; and pertinent provisions, such as the requirement for advertising in a local newspaper (*R. S.* 33:1–25), suggested the legislative contemplation that licensees would ordinarily maintain places of business within the State which would be amenable to local residents and interests for all proper purposes. When confronted with out-of-state concerns who desired the privilege of selling alcoholic beverages to New Jersey licensees without establishing any local places of business, the commissioner fairly adopted procedures which enabled them to designate New Jersey residents as authorized agents for the service of process and to advertise in the particular localities where the agents resided. It is highly significant that the designation was in nowise limited to proceedings instituted by the department—now the Division of

Alcoholic Beverage Control headed by a director. *L*. 1948, *c*. 439, *pp*. 1708, 1712. On the contrary, the broad phraseology which was used had peculiar applicability to ordinary civil actions in the courts. *Cf. Stevens v. Associated Mortgage Co.*, 107 *N. J. Eq.* 297, 299 (*Ch.* 1930), affirmed 110 *N. J. Eq.* 70 (*E. & A.* 1932); *In re Martin*, 86 *N. J. Eq.* 265, 274 (*Ch.* 1916). The Department did not actually need a resident agent for its own proceedings since it could readily have provided for notice by registered mail to the licensee's place of business (*R. S.* 33:1–31). It seems to us that what the department contemplated was that out-of-state liquor concerns should be readily accountable in our own State on all claims which might arise from their activities in New Jersey. This approach by the department was wholly reasonable insofar as it affected the private interests concerned and it also served the interests of effective liquor control. From the department's point of view, it was important that New Jersey's liquor licensees conduct themselves in responsible fashion and attain public confidence. If in the course of its activities within the State a liquor licensee commits a wrong in New Jersey, it should be readily amenable in our courts; it should not be permitted to insist that legal proceedings be instituted only in its own state or country, which might be California, England or elsewhere. Any contrary view would breed the very type of public disrespect and resentment which the department has rightly endeavored to avoid. In the instant matter the home state of the defendants happens to be our neighboring State of New York, but the alleged legal wrong rests upon acts committed entirely in New Jersey and may well turn upon interpretations of local laws and regulations which are preferably determined in the first instance in our own courts.

 We are satisfied that the department had ample statutory power (which it properly exercised) to require that the defendants designate a resident agent for the service of process in legal proceedings, including civil actions based on alleged wrongs committed in the course of their activities within New Jersey. Furthermore, the defendants are hardly

now in any position to complain about their own designation of Bernard Best as their authorized agent; when they applied for a license they made their designation without voicing any objections and, having received the license, they now seek to retain its benefits without acknowledging its burdens. It would be unjust to permit them to succeed. See *Manchester Press Club v. State Liquor Commission*, 89 *N. H.* 442, 200 *A.* 407, 116 *A. L. R.* 1093 (*Sup. Ct.* 1938); *Pohlers v. Exeter Mfg. Co.*, 293 *N. Y.* 274, 56 *N. E. 2d* 582 (*Ct. App.* 1944). In the *Manchester Press Club* case [89 *N. H.* 442, 200 *A.* 408] the court pointed out that a liquor license may be granted subject to requirements; that acceptance of the license constitutes acceptance of the requirements; and that the "requirements impose the obligation to observe them, since the obligation is one voluntarily assumed in return for the privilege." See also *Zukowski v. State*, 167 *Md.* 549, 175 *A.* 595 (*Ct. App.* 1934). In the *Pohlers* case the court dealt with a foreign corporation (not a liquor licensee) which had designated the Secretary of State as its agent for the service of process; in rejecting an attack on the validity and scope of the designation the court said [293 *N. Y.* 274, 56 *N. E. 2d* 584]:

"Here the 'consent' has been exacted by the State—not voluntarily offered by the defendant. That does not detract from its validity. Except as limited by the Constitution of the United States each State may exclude foreign corporations from doing business (*Lafayette Ins. Co. v. French*, 18 *How.* 404, 15 *L. Ed.* 451), or it may exact from a foreign corporation as a condition of doing business a consent to accept service of process in specified manner or upon a specified public officer in a specified place and with specified effect. *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 *U. S.* 93, 37 *S. Ct.* 344, 61 *L. Ed.* 610; *State of Washington [ex rel. Bond & Goodwin & Tucker] v. Superior Court*, 289 *U. S.* 361, 53 *S. Ct.* 624, 77 *L. Ed.* 1256, 89 *A. L. R.* 653. A designation of a public officer upon whom service may be made has the same effect as a voluntary consent. *Bagdon v. Philadelphia & Reading C. & I. Co.*, 217 *N. Y.* 432, 111 *N. E.* 1075, *L. R. A.* 1916*F*, 407, *Ann. Cas.* 1918*A*, 389; *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 *U. S.* 165, 60 *S. Ct.* 153, 84 *L. Ed.* 167, 128 *A. L. R.* 1437. A foreign corporation filing such designation or consent cannot complain that the courts of the State have given a broader construction

to such consent than the corporation intended, if its language 'rationally might be held to go to that length.' *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co., supra,* 243 *U. S. page* 95, 37 *S. Ct. page* 345, 61 *L. Ed.* 610. The condition imposed in this case is reasonable and in no wise discriminates in favor of domestic corporations against foreign corporations."

 In the light of all of the foregoing it is evident that, in the civil action before us, legal service on the defendants could effectively be made by service on their agent Bernard Best. See *R. R.* 4:4-4(*a*). If the original service had been made personally on Bernard Best, with sufficient copies for all of the defendants, the plaintiff would have avoided much of the delay which has ensued and would have forestalled the rather technical procedural points which have been advanced. But, be that as it may, the Appellate Division set aside the original service and for present purposes we shall assume that its decision was correct. *Cf. R. R.* 4:4-4; *Schnitzer and Wildstein, N. J. Rules Service,* A IV-50, 52 (1954). But see *Koninklijke Luchtvaart Maatschappij N. V. v. Curtiss-Wright Corp.,* 17 *F. R. D.* 49 (*D. C. S. D. N. Y.* 1955). The subsequent service was admittedly made on Bernard Best personally and he received enough copies for all of the defendants; nevertheless, the defendants urge that the plaintiff's complaint should be dismissed because this service was not made in conformity with *R. R.* 4:4-1 and *R. R.* 4:42-2(*a*). These rules contemplate that summons shall issue within ten days after the complaint; otherwise the court may in its discretion dismiss the action. They are designed to insure that after the plaintiff has filed his complaint he will diligently cause the summons to be issued so that the defendant will be advised of the complaint and be afforded early opportunity to answer or take such other steps as he considers appropriate. In the instant matter the defendants' agent received a copy of the complaint within ten days after its filing and it was presumably forwarded without any delay to their New York counsel. Thereafter the defendants had the original service set aside by the Appellate Division, but new service was effected about a month

after the Appellate Division issued its mandate. While this month's delay might readily have been avoided, it in nowise prejudiced the defendants and it would be shockingly unjust to dismiss the action because of it. The Law Division appropriately exercised its discretion in refusing to dismiss under R. R. 4:4–1 and R. R. 4:42–2(a). If, as the parties suggest, the statute of limitations has run on a new complaint, such dismissal would effectively defeat the plaintiff's action without any determination whatever on the ultimate merits—a result wholly inconsistent with the principles underlying our new judicial structure. See *Handelman v. Handelman,* 17 N. J. 1 (1954); *Escoett v. Aldecress Country Club,* 16 N. J. 438 (1954); *Tumarkin v. Friedman,* 17 N. J. Super. 20 (*App. Div.* 1951), certification denied 9 N. J. 287 (1953). In the *Tumarkin* case the court pertinently expressed the ever continuing though seemingly forlorn hope that cases will be presented upon their merits rather than their procedures:

"It is said that lawyers and even great judges display reluctance 'to let the past go.' *Clark, The Handmaid of Justice,* 23 *Wash. U. L. Quar.* 297, 311 (1938). Thus it may be noted that despite our modern judicial system and rules there appears to have been little letup in procedural contentions unrelated to the merits which, though mostly unfruitful, have involved considerable wastage; indeed, it has recently been estimated that almost half of our reported opinions, while disposing of the merits, have also dealt with questions of procedure. *Schnitzer, supra.* Procedural rules should not in themselves be the source of any extensive litigation (*Vanderbilt, The New Rules of the Supreme Court on Appellate Procedure,* 2 *Rutgers L. Rev.* 1, 18 (1948)); they should be subordinated to their true role, *i. e.,* simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits. *Ciocca v. Hacker,* 4 N. J. Super. 28, 33 (*App. Div.* 1949); *Hogan v. Hodge,* 6 N. J. Super. 55, 59 (*App. Div.* 1949). It seems to us that sympathetic observance of the foregoing by all the parties in the instant matter might well have avoided needless litigation and enabled the fair and final disposition of the entire controversy in the County Court, perhaps even before this date."

■■ The final contention advanced in support of the appeal is that the service upon the "partnership as such" was void. It is true, as the defendants point out, that the common law did not recognize the separate existence of partner-

ships and required that all legal actions concerning partnership matters be maintained by and against the individual partners. See *Seeley v. Schenck*, 2 *N. J. L.* 75 (*Sup. Ct.* 1806); *Buch v. Newsome*, 129 *N. J. L.* 585, 586 (*Sup. Ct.* 1943); *Lewis v. West Side Trust & Savings Bank*, 377 *Ill.* 384, 36 *N. E. 2d* 573 (*Sup. Ct.* 1941); *Dwyer v. Wiley Hotel Co.*, 91 *Ohio App.* 525, 108 *N. E. 2d* 859 (1952); 68 *C. J. S., Partnership*, § 207, *p.* 678 (1950); 40 *Am. Juris.* 429 (1942); *Crane, Partnership* 9 (1952); Note, *The Partnership as a Legal Entity*, 41 *Col. L. Rev.* 698 (1941). Nevertheless, partnerships came to be widely regarded as separate entities by men in their business affairs and legislatures and courts began to make inroads into the common-law doctrine. Although the Uniform Partnership Law (*R. S.* 42:1-1 *et seq.*) did not make partnerships jural persons for all purposes, it did treat them as such for many purposes. See *Crane, supra*, at 19. In *Finston v. Unemployment Compensation Commission*, 132 *N. J. L.* 276, 278 (*Sup. Ct.* 1944), affirmed *sub nom. Naidech v. U. C. C. of New Jersey*, 134 *N. J. L.* 232 (*E. & A.* 1946), the court cited the Uniform Partnership Law in support of its sound position that a partnership was "something more than just one individual added to other individuals" and was to be considered as a legal entity, at least for some purposes; its actual holding was that a partnership as such could be considered as a subject employer liable for contributions under the Unemployment Compensation Act. See *Morristown Electrical Supply Co. v. State Department of Labor and Industry*, 4 *N. J. Super.* 216 (*App. Div.* 1949). In many states the courts have gone further in suggesting that partnerships may properly be considered as legal entities for substantially all purposes. See *Caswell v. Maplewood Garage*, 84 *N. H.* 241, 149 *A.* 746, 73 *A. L. R.* 433 (*Sup. Ct.* 1930); *Dunbar v. Farnum*, 109 *Vt.* 313, 196 *A.* 237, 144 *A. L. R.* 996 (*Sup. Ct.* 1937); *Rubio Savings Bank of Brighton v. Acme Farm Products Co.*, 240 *Iowa* 547, 37 *N. W. 2d* 16, 9 *A. L. R. 2d* 459 (1949); *Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse, Okla.*, 268 *P. 2d* 886 (*Sup. Ct.* 1954).

Whatever conflicting views may be expressed on other phases of the problem, there is little doubt that the interests of justice are advanced by permitting plaintiffs to maintain actions against partnerships without necessarily naming the individual partners as defendants. See *Magruder and Foster, Jurisdiction over Partnerships*, 37 *Harv. L. Rev.* 793 (1924); *Crane, supra,* at 329. In 1945 the New York Judicial Council, in recommending a change in New York law to enable the maintenance of legal actions by and against partnerships as such, rightly pointed out that:

"Under existing law, a partnership may not sue or be sued in the partnership name, but may sue or be sued only in the respective names of its individual members. The rule that a partnership may not sue or be sued in its partnership name is merely a useless relic of the strict procedural rules at common law with nothing, apparently, to justify its continued existence. The common law rule derives from the legal conception of the partnership as simply a group of individuals. It is particularly undesirable in actions *against* partnerships because it places upon the plaintiff, the burden of ascertaining the individual members of a partnership and naming them as defendants." *Eleventh Annual Report of the Judicial Council of the State of New York* 224 (1945).

Pursuant to the council's recommendation, New York's Civil Practice Act was amended to provide that partners may sue and be sued in the partnership name. See *Ruzicka v. Rager,* 305 *N. Y.* 191, 111 *N. E. 2d* 878, 881 (1953), where the Court of Appeals stated that the legislative purpose was to rid New York's "procedure of the restrictive niceties, grounded in early common-law pleading" and that comparable statutes had been construed by other courts as "recognition of partnerships as legal entities for procedural purposes." In our own State this court has, under its constitutional rule-making power, adopted a rule indicating that for procedural purposes all partnerships may be considered as entities suable in their firm names. See *R. R.* 4:4–4(e) which provides unconditionally that summons and complaint may be served "upon a partnership" by serving a partner or a managing or general agent or an officer. Where service on the partnership alone is sought to be made by serving its agent, any resulting

judgment, while binding on the partnership assets, would not be binding on the individual partners who had not been served. See *Maglo v. Weaver*, 11 *N. J. Super.* 32, 35 (*App. Div.* 1950) ; *Neustadter v. United Exposition Service Co.,* 14 *N. J. Super.* 484, 494 (*Ch. Div.* 1951). Under such circumstances a requirement that all the individual partners nevertheless be formally named as individual defendants would serve no just purpose, and we are satisfied that the rule does not seek to impose it; to the contrary, it was adopted as a significant part of the modern civil practice which implemented the Judicial Article in our Constitution of 1947 and was designed to eliminate the senseless and burdensome procedural technicalities of the common law. However, where the plaintiff does seek to bind the individual partners to any resulting judgment he must, as heretofore, justly name and serve them as individual defendants either with or without joining and serving the partnership entity as a separate defendant. See *Tuttle v. Nichols Poultry & Egg Co.*, 240 *Iowa* 199, 35 *N. W. 2d* 875 (*Sup. Ct.* 1949) ; *L. C. Jones Trucking Co. v. Superior Oil Co.*, 68 *Wyo.* 384, 234 *P. 2d* 802 (*Sup. Ct.* 1951) ; 68 *C. J. S., Partnership*, § 209, *p.* 683 (1950) ; 40 *Am. Juris.* 433 (1942). *Cf. Schnitzer and Wildstein, supra,* at A IV–56.

In the instant matter the complaint contained no specific allegation that the plaintiff was proceeding against the partnership as an independent entity along with its individual partners; nevertheless, it was apparently so intended and understood by the parties. *Cf. Porter v. Hardin,* 164 *F. 2d* 401, 402 (*5th Cir.* 1947) ; *Darby v. Philadelphia Transp. Co.*, 73 *F. Supp.* 522, 523 (*D. C. Pa.* 1947). Thus the six copies of the summons and complaint which were actually served were intended for the partnership and the five individual defendants. The sheriff's return of service stated that he had made service upon the five individual defendants "and upon The Taylor Wine Company"; and in the course of their appeal, the defendants have unsuccessfully urged that such service on the partnership was void. In the light of our position that the plaintiff's personal service upon

their designated agent Bernard Best was the equivalent of personal service on all of the individual partners, the defendants would gain nothing if they were to prevail on their procedural contention that the partnership as such could never be served; in any event, we are satisfied that current-day principles governing the sound administration of justice require its flat rejection. The defendants' motion to dismiss the complaint was properly denied by the Law Division and its action is:

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and BURLING—2.