ALICE EULE, PLAINTIFF-APPELLANT, v. EULE MOTOR
SALES AND RUSSELL A. BOERTZEL, DEFENDANTS-
RESPONDENTS.

Argued February 6, 1961—Decided April 10, 1961.

*Mr. William V. Breslin* argued the cause for plaintiff-appellant (*Mr. William J. Scanlon,* on the brief).

*Mr. William R. Morrison* argued the cause for defendant-respondent Eule Motor Sales (*Messrs. Morrison, Lloyd & Griggs,* attorneys; *Mr. Kevin M. O'Halloran,* on the brief).

*Mr. Edward C. Hillis* argued the cause for defendant-respondent Russell A. Boertzel (*Messrs. Marley, Winkelried & Hillis,* attorneys; *Mr. Edward C. Hillis,* of counsel).

The opinion of the court was delivered by
WEINTRAUB, C. J.  The primary issue is whether a wife may sue a partnership of which her husband is a member for injuries negligently inflicted by him.  The partnership obtained a summary judgment which the Appellate Division affirmed.  62 *N. J. Super.* 250 (*App. Div.* 1960).  We granted certification.  33 *N. J.* 333 (1960).

Plaintiff was a passenger in a partnership automobile operated by her husband.  Neither the husband nor his

copartner is named in the complaint. The action is against the partnership as such, and a judgment for plaintiff accordingly would bind the partnership assets and not the partners individually. *Mazzuchelli v. Silberberg,* 29 *N. J.* 15, 21 (1959). The partnership was formed in New York and plaintiff resides there. The accident occurred in New Jersey. Both parties present the cause on the premise that the law of our State controls.

Starting with the proposition that a wife may not sue her husband for negligence, *Koplik v. C. P. Trucking Corp.,* 27 *N. J.* 1 (1958), defendant contends (1) the action is in effect a forbidden suit against the husband because each partner individually rather than the partnership "entity" is liable for the tort; and (2) even if the partnership is liable, yet a judgment against it would invade the husband's interest in its assets and further the husband would be chargeable fully if his partner sought indemnification. On both grounds, defendant urges the policy considerations which bar an action by a wife against her husband are equally potent here.

*Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (*E. & A.* 1939), followed the lead of *Schubert v. August Schubert Wagon Co.,* 249 *N. Y.* 253, 164 *N. E.* 42, 64 *A. L. R.* 293 (*Ct. App.* 1928), and sustained a wife's right to sue her husband's employer on the basis of her husband's negligence. The court held that a husband's negligent injury of his wife constitutes a wrong, and the barrier to an action by her against him is solely an immunity personal to him. This distinction between the existence of a wrong and the husband's private immunity from suit was repeated in *Koplik, supra,* where the court said (27 *N. J.,* at *p.* 7) "our statute simply disables or incapacitates the spouse possessing the cause of action from suing the tortfeasor mate." The employer, the *Hudson* opinion continued, is liable because "The master is liable for the servant's act as though for his own," citing the maxim, "He who acts through another acts by himself" (123 *N. J. L.,* at *pp.* 254–

255).  Thus the employer is directly chargeable as if he were the immediate actor and may not escape because his employee happened to be the husband of the victim.  In the last analysis, as we shall later develop, *respondeat superior* rests upon a public policy that the employer bear the burden as an expense of the operation he expands through the employment of others.

In *Hudson* and *Schubert* defendant argued further that even though the employer is thus liable without regard to the personal immunity of his employee, yet since the employer may seek indemnity from the employee, the net effect is the same prospect of marital discord which underlies the rule prohibiting a direct suit.  *Hudson* and *Schubert* answered, in conceptual terms, that the employer's right of indemnity from the employee is not by way of subrogation to the wife's claim against the husband, but rather arises directly from the employee's breach of his duty to the employer to exercise due care.  Thus no violence is done to the rule that the wife cannot sue the husband, since her cause of action is not the vehicle of the employer's suit.

But, of course, such legal niceties do not meet the point that a claim-over against the husband will promote the discord which the ban against a direct interspousal suit was intended to prevent.  The answer, however, is readily found in realities.  The theoretical liability of an employee to reimburse the employer is quite anachronistic.  The rule would surprise the modern employer no less than his employee.  Both expect the employer to save harmless the employee rather than the other way round, the employer routinely purchasing insurance which protects the employee as well.  Except for the rare case in which the liability of the employee may serve as a stepping stone to reach someone else, see *Maryland Cas. Co. v. New Jersey Mfrs. Ins. Co.,* 48 *N. J. Super.* 314 (*App. Div.* 1958), affirmed 28 *N. J.* 17 (1958), the prospect of a claim for indemnity is only of academic significance.  2 *Harper & James, Torts* § 26.1 *p.* 1363 (1956).

We should remember we are dealing with negligence which often is but a matter of split-second inadvertence. The concentration of people and machines means inevitably a substantial and predictable incidence of negligent injury. The employee can hardly carry that burden. Reflecting the commonly-held view that the enterprise should be the final repository of the inevitable risk of loss, the Legislature recently provided that an employee shall not be liable for negligent injury of a co-employee entitled to workmen's compensation benefits, *L.* 1961, *c.* 2, amending *R. S.* 34:15–8. We note also that the United States Supreme Court would not find the federal government could seek indemnity from its employee. *United States v. Gilman,* 347 *U. S.* 507, 74 *S. Ct.* 695, 98 *L. Ed.* 898 (1954).

As we have said, employers do not in fact seek to pass the burden to their employees. It would hardly be realistic to assume that employers would alter that policy merely because the victim of the business activity happens to be the spouse of the employee. And finally, if the prospect of a suit for indemnity were a lively one, there is the possibility that upon a balancing of considerations the right to indemnity would yield to the right of the injured spouse, that is to say, that indemnity from the negligent spouse would be denied. *Prosser, Torts* § 101, *pp.* 678–679 (*2d ed.* 1955); Note, 21 *Cornell L. Q.* 157, 164 (1935). *Cf. Kennedy v. Camp,* 14 *N. J.* 390 (1954), in which it was held that a tortfeasor could not seek contribution against the co-negligent husband of the plaintiff.

For these reasons the rule of *Schubert* is well entrenched in good sense. The lead of *Schubert* has been widely followed and today it represents the general rule, 2 *Harper & James, Torts* § 26.17, *p.* 1427 (1956); *Prosser, Torts* § 101, *p.* 679 (*2d ed.* 1955), and is accepted in *Restatement of Agency* § 217 (2), comment *b* (1933).

With the foregoing in mind, we turn to the immediate problem whether a wife may sue her husband's partnership. There are two facets. One is substantive, *i. e.,* whether

liability exists. The other is procedural, whether the husband must be joined as a party defendant and whether such joinder, if required, should prevent the result which ought to be reached as a matter of justice.

As to the substantive side, it is elementary that each partner is the agent of the other and of the partnership. This common law principle was adopted by the uniform partnership act. *R. S.* 42:1–9 provides, for present purposes, that "Every partner is an agent of the partnership for the purpose of its business." *R. S.* 42:1–13 provides with respect to any wrongful act or omission of "any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners * * * the partnership is liable therefor to the same extent as the partner so acting or omitting to act." We shall in a moment comment upon the quoted language. *R. S.* 42:1–15 provides that all partners are liable jointly and severally for everything chargeable to the partnership under *R. S.* 42:1–13.

With respect to the liability of the husband's partner and of the partnership, there is no reason to reject the distinction drawn in *Schubert* and *Hudson* between liability of the principal and the personal privilege or immunity of the husband-agent. The same considerations which deny the ordinary principal or employer the right to hide behind the familial relationship between its representative and the victim are equally pertinent. Indeed *R. S.* 42:1–4 (3) provides without qualification that "The law of agency shall apply under this chapter." The language we quoted from *R. S.* 42:1–13 that the partnership is liable "to the same extent as the partner" for any act or omission of a partner "acting in the ordinary course of the business of the partnership *or* with the authority of his copartners" (emphasis added) may well, by reason of the disjunctive phrasing, have been intended to enlarge the liability. See Note, 5 *Brooklyn L. Rev.* 174 (1936). We need not now decide. But it is difficult to believe the draftsman had in mind the

special situation before us and intended to give the partnership or the copartner the personal immunity of the spouse.

Two circumstances here present do not appear in the *Schubert* scene. One is that if the partnership assets are reached, something of value belonging to the husband is directly implicated. As an aside we note that in practical effect this would be equally true if the partners had chosen to do business in corporate form, for the partner's interest in the partnership "is his share of the profits and surplus, and the same is personal property," *R. S.* 42:1–26, rather than a transferable or leviable interest in the specific assets, *R. S.* 42:1–25. In the case of a close corporation, the wife may recover notwithstanding her husband's investment in corporate shares. *Price v. Old Label Liquor Co., 23 N. J. Super.* 165 (*App. Div.* 1952). The other circumstance is that in addition to the theoretical obligation to indemnify the principal, present in the *Schubert* situation, the husband here would be called upon to contribute if partnership assets should be insufficient to meet partnership liabilities.

But these additional circumstances add nothing of practical significance. Partners contemplate liability for negligent operation of their vehicles, and either expect to share it or to provide against it by insurance. Surely partners do not contemplate a different approach with respect to injuries to the spouse of one of them merely because the agency of the hurt happens to be the husband rather than some other partnership representative. In terms of what men expect, the wife's claim is no different from any other. Hence the considerations we have already related in discussing *Schubert* seem to us to preponderate in favor of the injured spouse, notwithstanding the differences just noted.

In principle, the issue was decided in *Felice v. Felice, 34 N. J. Super.* 388 (*App. Div.* 1955). There the wife of a partner recovered workmen's compensation benefits from her husband's partnership, notwithstanding a prior decision barring a compensation proceeding where the claimant was the spouse of an individual employer, *Bendler v. Bendler,*

3 *N. J.* 161 (1949). We approved of *Felice* in *Mazzuchelli v. Silberberg,* 29 *N. J.* 15 (1959), although we differed with the premise of *Felice* that the partnership "entity" was the employer and the partners were not. We said of *Felice* (29 *N. J.,* at *p.* 24):

> "* * * There the employee-wife of a partner was awarded compensation against the partnership as such. The result was a fair adjustment between a wife's ancient inability to sue her husband for tortious injury and *the statutory policy that the consequences of industrial injury be deemed to be a business expense.* The observations there made with respect to the relationship between the partners and an employee were unnecessary for the decision and obviously were so regarded by the same judges when they decided *Parker* [*Parker v. Zanghi,* 45 *N. J. Super.* 167 (*App. Div.* 1957)]." (Emphasis added)

The statutory policy which we there found to outweigh the policy against interspousal suits is in essence but an application of the policy which underlies the common law rule of *respondeal superior.* Although a number of rationales of *respondeat superior* have been suggested, the final basis is a public policy that one who expands his operation by the employment of others should bear the incidental losses. The employer is better able than the employee to bear the burden, and he can pass it along as a cost of his product or service. *Prosser, Torts* § 62, *p.* 351 (*2d ed.* 1955), states:

> "It is now quite generally recognized that the true basis of such vicarious liability is one of policy. As in other cases of strict liability, there is a deliberate allocation of a risk. The losses caused by torts of the servant which are more or less certain to occur in the conduct of the master's enterprise, and are closely connected with it, are placed upon the employer because he is better able to bear them, and to distribute them, through prices, rates or liability insurance, to the public. * * *"

The workmen's compensation act to which we referred in discussing *Felice* differs from the common law in that it imposes liability without fault whereas the common law required fault, but in placing the burden of injury upon the employing unit, the statute is an expression of the same

basic policy upon which *respondeat superior* rests. See Smith, "Frolic and Detour," 23 *Colum. L. Rev.* 444, 456–457 (1923); 2 *Harper & James, Torts* § 26.5, *p.* 1372 (1956). Thus in holding that a wife may proceed against the partnership enterprise notwithstanding her husband's investment therein, *Felice* accepted and applied the very thesis of *Schubert* that the principal whose agent inflicts a wrong may not escape responsibility because the agent it engaged happened to be married to the victim.

Hence we are satisfied the husband's partner and the partnership are chargeable with the husband's wrong. This leaves the procedural aspect. If all the partners had to be joined in order to reach the partnership assets, the necessity for such formal joinder of the husband would not suffice to bar justice due the wife upon substantive principles. But we need not develop this view since it is settled in our State that a partnership creditor may sue the partnership as such without joinder of the partners and thereby reach the partnership assets. *X-L Liquors, Inc. v. Taylor,* 17 *N. J.* 444, 456–457 (1955). In *Mazzuchelli, supra* (29 *N. J.,* at *p.* 21), we pointed out that although the partnership act adopted the common law "aggregate" theory of a partnership, yet for some purposes it in effect clothed the partnership in the garb of an "entity." We there noted that the partnership has that special character with respect to the assets and obligations of the enterprise, and hence a partnership liability may be enforced against its assets in an action against the partnership as such.

There are but a few reported cases elsewhere dealing with the right of a spouse to sue her husband's partner or partnership. The decision upon which defendant heavily relies is *Caplan v. Caplan,* 268 *N. Y.* 445, 198 *N. E.* 23, 101 *A. L. R.* 1223 (*Ct. App.* 1935). There the wife sued the partners, including her husband, jointly and severally for injuries inflicted by her husband. A bare majority of the court held against the wife. Two judges dissented, finding the principle of *Schubert* was controlling, a conclusion with which

we agree. The case evoked much critical comment, most of which supported the dissent. *Crane, Partnership* § 54, *pp.* 289–290 (1952); Notes, 5 *Brooklyn L. Rev.* 174 (1936); 21 *Cornell L. Q.* 157 (1935); 5 *Fordham L. Rev.* 186 (1936); 24 *Geo. L. J.* 484 (1936); 30 *Ill. L. Rev.* 806 (1936); 13 *N. Y. U. L. Q. Rev.* 310 (1936); 84 *U. Pa. L. Rev.* 429 (1930); 22 *Va. L. Rev.* 473 (1936); 45 *Yale L. J.* 528 (1936). See also *Prosser, Torts* § 101, *p.* 679 (2d ed. 1955).

We add that the holding of *Caplan* is no longer effective in New York. Two years after it was decided, the legislature authorized suits between spouses for negligent injury. In *Jacobs v. United States Fidelity & Guaranty Co.*, 2 *Misc.* 2d 428, 152 *N. Y. S.* 2d 128 (*Sup. Ct.* 1956), the wife recovered a judgment against her husband's partner. She then sued the insurance carrier. The carrier defended on the basis of the statutory provision that a policy shall not insure against the liability of an insured to his spouse unless an express provision assuming that coverage is included in the policy. The policy did not contain that provision. Nonetheless the carrier was held under the coverage afforded the husband's partner. The court reviewed the history of the statute. It found the statute was a response to the criticism of *Caplan* and that (152 *N. Y. S.* 2d, at *p.* 132) "the effect of the 1937 amendments was to abrogate the principle of the Caplan decision, making it no longer applicable. Consequently, the law now, as I view it, is in harmony with the opinion of the dissenting judges in the Caplan case and the spirit of the doctrine of the Schubert case." In *Travelers Indemnity Co. v. Unger*, 4 *Misc.* 2d 955, 158 *N. Y. S.* 2d 892 (*Sup. Ct.* 1956), the wife of a partner was injured while riding in a partnership automobile operated by her husband. She sued the partnership as an entity. The policy did not contain a provision assuming liability for injuries to a spouse, but the court nonetheless held the policy covered the partnership's liability to the partner's wife.

The New York cases just cited of course are distinguishable since the legislature of that state authorized actions between spouses. We refer to them to show that *Caplan* no longer represents the policy of New York and that the statute was apparently prompted by the criticism of that decision. Incidentally, we add that insofar as the court in *Caplan* may have been troubled by the necessity of suing all the partners to reach the partnership assets, the New York legislature later authorized an action against a partnership as such, the resulting judgment binding the partnership assets but not the individual partners who are not joined. Thus the legislature sanctioned the same procedure we have approved. See *Ruzicka v. Rager,* 305 *N. Y.* 191, 111 *N. E. 2d* 878 (*Ct. App.* 1953); *Funaro v. Houslon,* 19 *Misc. 2d* 1078, 193 *N. Y. S. 2d* 729 (*Sup. Ct.* 1959).

There is a further issue advanced by defendant. It argues that the trial court granted summary judgment for a second reason, to wit, the absence of agency of the husband on behalf of the partnership. The order granted judgment "for the reasons set forth in oral arguments and supported by the brief of the defendant." Needless to say, the recital should have been more edifying. We are not furnished a transcript of the oral argument or of the trial court's opinion if there was one. The notice of motion is unrevealing. Defendant, however, printed its trial court brief. It is short. Under the "Statement of the Case" it charges that "This action is an attempt to circumvent the immunity that exists as a result of a tort between a husband and wife under the laws of this state." Under "Argument" appears a discourse related to that issue, in the course of which defendant said "There being no agency between the defendant, Eule Motor Sales, and the driver-husband of the plaintiff, it must necessarily follow that if any right of action exists, it exists between husband and wife only," which is immediately followed by a continuation of the argument of the husband-wife theme.

■■ Thus we cannot be sure the trial court intended to give judgment on this additional ground. At any rate, the record would not warrant it. Defendant relied upon the wife's deposition upon discovery. She testified that she and her husband were on their way to the home of friends in Staten Island. She said her purpose was a "social" visit. Then follows:

"Q. Do you know of your own knowledge whether your husband was visiting the Wallaces for any particular purpose other than a social visit? A. No.

Q. Do you know of your own knowledge whether or not there was any business transaction between your husband and the Wallaces on this occasion? A. Not to my knowledge."

Proof of ownership raised a presumption of agency on behalf of the partnership, the business of which was the sale of used cars. No affidavit was submitted on behalf of the partnership to rebut the presumption. The testimony of the wife is at best equivocal. Her answers may fairly be read to mean only that she does not know. The record is insufficient to sustain a summary judgment.

The judgment is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

HANEMAN, J. (dissenting). I disagree with my colleagues that the spouse of one partner should be permitted to maintain an action against the partnership for torts committed by her husband. The effect of the majority opinion is that for the purposes of such an action a partnership is to be regarded as a jural entity, separate and distinct from the individuals who compose the partnership.

The many facets of interspousal immunity from liability for torts have received much judicial attention in recent years. See *Kennedy v. Camp*, 14 *N. J.* 390 (1954); *Koplik v. C. P. Trucking Corp.*, 27 *N. J.* 1 (1958); *Tomkovich v. Public Service Coordinated Transport*, 61 *N. J. Super.* 270 (*App. Div.* 1960).

Interspousal immunity is grounded upon the terms of *R. S.* 37:2–5, which reads:

"Nothing in this chapter contained shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter."

In effect, the Legislature has, by this enactment, incorporated the common law into the statutory law. At common law one spouse could not sue the other in tort. The reason for this disability arose from the artificial and technical concept of the legal identity of husband and wife. The deleterious impact which such suits would have, if permitted, upon the home, the basic unit of organized society, *Kennedy v. Camp, supra,* 14 *N. J.,* at *p.* 396, and the possibility of fraudulent and collusive actions because of the close and intimate relationship existing between husband and wife are additional reasons. *Prosser, Torts,* § 101, *p.* 677 (1955); Justice Jacobs' dissent in *Koplik v. C. P. Trucking Corp., supra;* Annotation, 43 *A. L. R. 2d* 632, 663.

At common law a partnership had no existence separate and distinct from that of the individual partners. The partnership as such, was not a jural entity and legal actions concerning partnership matters could be maintained only against the individual partners. Actions may now, however, be maintained against the partnership without joinder of the individual partners. A judgment resulting from such a styled suit is binding only on the partnership and not on the partners in their individual capacities. *X-L Liquors v. Taylor,* 17 *N. J.* 444 (1955).

Partners are jointly and severally liable for the debts and obligations of the partnership. *R. S.* 42:1–15, and the acts of the co-partners as far as these acts are within the scope of their agency for the partnership. *R. S.* 42:1–13.

Although *Felice v. Felice,* 34 *N. J. Super.* 388 (*App. Div.* 1955), regarded the partnership as an entity for the purposes of determining the liability to an employee-wife of a partner under the Workmen's Compensation Law, the

court in *Mazzuchelli v. Silberberg,* 29 *N. J.* 15, said, at *p.* 24:

"* * * There the employee-wife of a partner was awarded compensation against the partnership as such. The result was a fair adjustment between a *wife's ancient inability to sue her husband for tortious injury and the statutory policy* that the consequences of industrial injury be deemed to be a business expense." (Emphasis supplied)

It is apparent, therefore, that the legal entity of a partnership was recognized in *Felice* only because of the supervening public policy concerning compensation for industrial injuries. No such public policy exists in the matter *sub judice.*

The court further said, in *Mazzuchelli v. Silberberg, supra,* in a well reasoned and comprehensive opinion reviewing the history of the *Uniform Partnership Law, R. S.* 42:1–6 *et seq.,* at *p.* 21, that while for some purposes the partnership should be regarded as an entity;

"But with respect to the subject here pertinent, to wit, liability for performance of obligations, contractual or other, including obligations to employees, the uniform law plainly did not adopt an entity theory."

This constitutes a restatement of the common law philosophy and is presently applicable to actions in tort.

The principle as to whether a partner's spouse may maintain an action grounded in tort against a partnership of which the spouse is a member has been decided by the highest courts of various states. Without exception these high courts have denied the right to maintain such an action. *David v. David,* 161 *Md.* 532, 157 *A.* 755, 81 *A. L. R.* 1100 *(Ct. App.* 1932); *Caplan v. Caplan,* 268 *N. Y.* 445, 198 *N. E.* 23, 101 *A. L. R.* 1223 *(Ct. App.* 1935); *Karalis v. Karalis et al.,* 213 *Minn.* 31, 4 *N. W. 2d* 632 *(Sup. Ct.* 1942).

Prior to the *Caplan* case the New York Court of Appeals, in *Schubert v. August Schubert Wagon Co.,* 249 *N. Y.* 253,

164 *N. E.* 42, 64 *A. L. R.* 293 (1928) sustained the wife's right to sue her husband's employer on the basis of her husband's negligence, in spite of the right of the employer to a remedy over as against the husband. A similar result was attained in *Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (*E. & A.* 1939). Both of these decisions were bottomed upon the theory that such action against the husband arose not by virtue of subrogation to the rights of the wife, the injured party, but rather out of the breach of an independent duty owed the employer. The wife's action was therefore not the direct means of the employer's suit. Interestingly, all of the judges who voted with the Chief Judge Cardozo in *Schubert* voted with the majority in *Caplan,* emphasizing the continuation of the distinction between a suit by the wife of a partner against the partnership and a suit by the wife of an ordinary employee against the husband's employer. The chronology of these two opinions strengthens the conclusion that the New York Court of Appeals knowingly and intentionally applied the interspousal immunity to partnerships in the face of a prior refusal to so do in an employer-employee relationship. If *Caplan* and *Schubert* are in conflict then the later opinion, *i. e., Caplan,* controls.

There is a real and not a fanciful distinction between a suit by a wife against a corporation in which her husband is a stockholder, even a majority stockholder, see *Price v. Old Label Liquor Co., Inc.,* 23 *N. J. Super.* 165 (*App. Div.* 1952), and a suit between a wife and a partnership of which her husband is a partner. The corporation is an entity separate and distinct from a stockholder husband. Not so with a partnership, as there is no merging of the members of a partnership into an artificial personality. A partnership is merely the sum total of the individual partners. *Lewis v. Tilton,* 64 *Iowa* 220, 19 *N. W.* 911 (*Sup. Ct.* 1884). Although it might be reasoned that both a judgment recovered by a wife against a corporation of which the husband is a stockholder and a judgment recovered by

a wife against a partnership in which the husband is a partner, to some extent, affect the husband's assets, it does not follow that we should conclude that such suits are of an identical nature; nor that such an eventuality should serve to demolish the common law prohibition against interspousal suits, recognized by the Legislature.

The rule in *Caplan* was abrogated by the legislature of New York in 1937, 14 *McKinney, Domestic Relations Law,* § 357. At the same session in which that statute was enacted the New York legislature enacted the following statute:

"No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse or because of injury to, or destruction of property of his or her spouse unless express provision relating specifically thereto is included in the policy."

27 *McKinney, Insurance Law,* § 167, *sub-sec. 3.* The reasonable conclusion from these contemporaneously passed statutes is that the legislature was aware of the inherent danger of fraud and collusion in interspousal suits in instances where the husband shifts the actual recovery to an insurance carrier.

The same dictates of public policy which have been held to preclude persons standing in the relation of husband and wife from suing each other directly in tort should in all logic prevent either of them from maintaining such an action against a partnership of which the other is a member. Such an action could not have been maintained at common law. To sanction such action is permitting that to be done indirectly which is directed by legislative *fiat* not to be done directly. The solution, if deemed required by public policy, should lie with the Legislature, since the prohibition of such suits is legislatively imposed. Furthermore, if we concede, as the cases have said, that suits in tort directly between husband and wife may serve to disrupt the family harmony, the same effect must eventuate from a suit which would

involve that portion of the husband's estate represented by his interest in the partnership. There could result a diminution in the value of his assets in either event. The distinction, if any exists, can at best be said to be only in the degree of such reduction. The very real danger of fraud and collusion in the face of the prevalence of liability insurance must be recognized. New York has pointed the way by the action of its legislature. I would not, by opinion of this court, without the power to restrict insurance coverage, open the door to promiscuous interspousal suits.

I would therefore affirm.

HALL, J., concurs in this dissent.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices HALL and HANEMAN—2.