110 N.J. Super. 9 (1970)
264 A.2d 245
RAYMOND F. MALE, COMMISSIONER DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ACME MARKETS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1970.
Decided April 22, 1970.
*10 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Thomas J. Brady argued the cause for appellant (Messrs. Milton, Keane & DeBona, attorneys; Mr. Henry J. Byrne, on the brief).
Mr. Richard C. Camp, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Acme Markets, Inc. requires the cashiers at the check-out counters of its supermarkets to reimburse it for any shortages in their receipts. Overages belong to the employer. Formerly, the shortages were taken out of the wages. But this was deemed to be in violation of N.J.S.A. 34:11-4.4, which prohibits employers from "withholding" or "diverting" from wages payable any sums other than those specifically authorized by that statute. Cashier's *11 "shortages" is not an authorized item which the employer may "withhold" or "divert" from wages. Acme does not dispute this.
After the new statute Acme changed its policy. It still required its employees at the check-out registers to make good any shortages but, instead of taking them out on payday, it required the employees to reimburse it on some day subsequent to payday. The obligation was the same, but the time of reimbursement was delayed to overcome the statutory prohibition.
The Commissioner of Labor and Industry challenged the validity of this new policy by seeking a restraint and penalties in the Superior Court, Chancery Division. It was there held that this new policy still violated N.J.S.A. 34:11-4.4, in that it constituted a withholding or diverting of wages for an unauthorized purpose, regardless of the exaction of the money on some day other than payday. In brief, it was deemed to be an attempted circumvention of the statute's prohibition. The restraint was granted, but the statutory penalties were denied.
In reaching that decision, the Chancery Division reserved to the employer the right to commence legal actions for any loss suffered by reason of the employee's negligence or defalcation. However, it seemingly limited the employer's remedy for recovery of shortages to a lawsuit only. It did not, at least expressly, authorize employees to adjust shortages by voluntary action on their part. Perhaps it doubted any such action could be "voluntary."
Acme appeals from the judgment. It maintains that the purpose of the statute is to prohibit the employer from withholding the shortage from the wages on payday only, but does not preclude a store's policy of requiring employees to make good their shortages on a day subsequent to payday. It reasons that the wages lose their identity as "wages" once they have been paid and are under the employee's sole control. Moreover, Acme points out that, under its collective bargaining agreement with their Employees' Union, *12 there is a provision whereby employees agree to liability for their shortages.
The collective bargaining agreement does not conflict with the pertinent statute. If it did, it would, like all other contracts, be subject to the statute. For example, if the union agreement authorized a deduction of shortages from wages, such a provision would contravene the law, would violate public policy and be invalid. Thus, the acknowledged liability of employees for shortages, set forth in the collective bargaining agreement, is something apart from the withholding or diverting of wages to make good shortages, which is prohibited by N.J.S.A. 34:11-4.4.
Shortages are almost invariably due to the negligence or dishonesty of the employee. It is a fundamental rule in the law of agency that an agent or employee is generally liable to his principal or employer for loss sustained by the latter due to the former's negligence or defalcation. Therefore, the store policy of holding its check-out cashiers liable for their shortages does not contravene public policy or established law. Cf. Restatement, Agency, 2d, §§ 379(1), 382, 401, 402; 3 Am. Jur.2d, Agency, §§ 199, 201, 202, 215.
If, possibly, a shortage occurs for which the cashier is in no way at fault, for example, a holdup or thievery by a fellow-employee, then presumably the loss would not be a "shortage" in the commonly accepted meaning of that term. If sued, the employee could properly defend on that ground. Moreover, a grievance procedure is provided for in the collective bargaining agreement.
Since there is generally legal liability for a "shortage," the narrow issue then is how may the employer lawfully collect it. All agree that N.J.S.A. 39:11-4.4 prohibits the employer from taking it out of wages payable on payday. No one disputes that the employer may institute a lawsuit against his employee for loss occasioned by the employee's negligence or conversion. We agree with the trial court that the employer may not do indirectly or by obvious *13 circumvention what the law directly prohibits. It would be an anomaly for the employer to pay the wages in full on a Friday night and then require the employee to take the money out of the same pay envelope and turn it back to the employer a day or so later to reimburse for the shortage.
The only real difficulty lies in the trial court's requirement that a lawsuit must be instituted by the employer before he can recover a shortage to which he is legally entitled. We can appreciate the need for a lawsuit where fault for the shortage, or the amount thereof, is in dispute. On the other hand, an employee might readily admit the shortage and his responsibility therefor and be perfectly willing to reimburse for it. He may not need any recourse to wages to make good the loss. Yet, to require a lawsuit in every such case and the additional costs and expenses entailed thereby might only magnify the loss, overcrowd court calendars and be undesirable to all parties concerned. For these reasons, we would not deem a lawsuit the only remedy for recovery of shortages. We realize the difficulty of regarding any reimbursement as "voluntary," but we would not totally eliminate its possibility.
Except as modified herein, the judgment is affirmed. No costs.