Daniel BECKWITH, Plaintiff, Appellee,

v.

UNITED PARCEL SERVICE, INC.,
Defendant, Appellant.

Daniel BECKWITH, Plaintiff,
Appellant,

v.

UNITED PARCEL SERVICE, INC.,
Defendant, Appellee.

Nos. 89–1476, 89–1518.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1989.

Decided Nov. 16, 1989.

Me., were on brief for the State of Me., amicus curiae.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and FAIRCHILD, Senior Circuit Judge.*

COFFIN, Senior Circuit Judge.

The primary question in these appeals is whether federal labor law preempts a Maine statute that prohibits employers from satisfying claims against their employees through payroll deductions required as a condition of employment. The district court upheld the state provision, 703 F.Supp. 138, and we agree that the statute is not inconsistent with federal law. We also affirm the district court's judgment that plaintiff is not entitled to liquidated damages and attorney's fees.

I.

Plaintiff Daniel Beckwith, a driver for appellant United Parcel Service, was terminated for gross negligence for violating UPS delivery policies and causing substantial loss of merchandise.[1] In a meeting with his UPS supervisors and his union representative, Beckwith offered to pay back the losses he caused if UPS would reinstate him. UPS agreed, and the parties entered into a written payroll deduction agreement providing that $50 per week would be deducted from Beckwith's paycheck until a total of $7,814 was repaid.[2] The weekly deductions began in April 1986.

About eighteen months later, Beckwith filed this action claiming that payroll deduction agreements such as the one he signed are prohibited by Maine law, and that UPS therefore was required to return to him the total amount deducted from his paychecks. Beckwith relied on 26 M.R.S.A. § 629, which states in pertinent part:

> No person, firm or corporation shall require or permit any person as a condi-

Margaret Coughlin LePage with whom Charles S. Einsiedler, Jr., and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., were on brief, for United Parcel Service, Inc.

James B. Haines, Jr., with whom Susan L. Mansfield and Black, Lambert, Coffin & Haines, Portland, Me., were on brief, for Daniel Beckwith.

James E. Tierney, Atty. Gen., and Thomas D. Warren, Deputy Atty. Gen., Augusta,

---

* Of the Seventh Circuit, sitting by designation.

1. Plaintiff apparently released packages in circumstances not permitted by UPS policies. This resulted in the misdelivery of approximately $8,000 worth of computer equipment and approximately $1,400 worth of other merchandise, including video equipment. This merchandise was never recovered by UPS or its intended recipients.

2. UPS agreed to forgive the other losses caused by Beckwith's violations.

tion of securing or retaining employment to work without monetary compensation or when having an agreement, verbal, written or implied that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person....

For purposes of this subchapter, the word "debt" means a benefit to the employee. Debt does not include items incurred by the employee in the course of the employee's work ..., such as cash shortages, inventory shortages ..., damages to the employer's property in any form or any merchandise purchased by a customer.

An employer shall be liable to the employees for the amount returned to the employer as prohibited in this section.

Beckwith also sought liquidated damages, interest and attorney's fees under 26 M.R. S.A. § 626-A.[3]

In response to Beckwith's claim, UPS asserted that federal labor law prohibits the state of Maine from invalidating the payroll deduction arrangement, which is specifically permitted by the collective bargaining agreement between UPS and its employees' union, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.[4] UPS further contended that, even if the payroll deductions were invalidated, the penalties Beckwith seeks under § 626-A do not apply to actions brought under § 629.

The district court rejected UPS's preemption argument, concluding that the statute addresses a substantive area of law that falls outside the federal National Labor Relations Act. The court, however, also rejected Beckwith's claim for liquidated damages and attorney's fees, concluding that the Maine legislature intended to limit

an employee's remedy under § 629 to recoupment of the deducted wages.

Both sides have appealed. We consider first the question of preemption. Because we agree with the district court that § 629 may coexist with federal labor law, we must then consider Beckwith's argument that he is entitled to all of the remedies listed in § 626-A.

## II.

■ The Supreme Court repeatedly has observed that it " 'cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions.' " *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 757, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985) (quoting *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 289, 91 S.Ct. 1909, 1919, 29 L.Ed.2d 473 (1971)); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 n. 4, 105 S.Ct. 1904, 1909 n. 4, 85 L.Ed.2d 206 (1985). To determine whether a particular law must give way to policies embodied in the National Labor Relations Act, the Court generally has employed two preemption doctrines. The so-called *Garmon* rule, *see San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), is designed to protect the primary jurisdiction of the National Labor Relations Board, which has responsibility for determining whether conduct is protected or prohibited by the NLRA. *See Metropolitan Life*, 471 U.S. at 748, 105 S.Ct. at 2393. Under this doctrine, preemption occurs when a state attempts to regulate conduct that is actually or arguably protected by section 7 of the Act, or that is actually or arguably prohibited by section 8.

---

**3.** Section 626-A lists the penalties for a number of different wage provisions that an employer might violate, including § 629, the one at issue in this case. *See infra* at p. 350.

**4.** Article 10, Section 1 of the National Master United Parcel Service Agreement allows payroll deductions when gross negligence has been shown by "clear proof." The provision states:

"Employees shall not be charged for loss or damage unless clear proof of gross negligence is shown.
This Article is not to be construed as permitting charges for loss or damage to equipment under any circumstances.
No deduction of any kind shall be made without a hearing with the Local Union."

The second approach to labor law preemption, known as the *Machinists* doctrine, *see Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), proscribes state regulation of conduct that Congress intended to be unregulated. The theory behind this doctrine is that Congress affirmatively wanted certain aspects of labor relations " 'to be controlled [only] by the free play of economic forces,' " *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987) (quoting *Machinists*, 427 U.S. at 140, 96 S.Ct. at 2553).

The *Machinists* doctrine originally developed to determine whether particular weapons of bargaining not directly addressed by the NLRA could be subject to state regulation. *Metropolitan Life*, 471 U.S. at 749 n. 27, 105 S.Ct. at 2394 n. 27. In the *Machinists* case, for example, a state labor relations board had enjoined a union from a concerted refusal to work overtime. The Court held that Congress intended unions to be able to use such measures to exert economic pressure, and the state therefore had " '[entered] into the substantive aspects of the bargaining process to an extent Congress has not countenanced.' " *Machinists*, 427 U.S. at 149, 96 S.Ct. at 2557 (quoting *NLRB v. Insurance Agents*, 361 U.S. 477, 498, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960). More recently, the Supreme Court has invoked the *Machinists* doctrine when considering state laws that establish minimum employment standards, holding that Congress did not intend to prohibit all state regulation of matters affecting the health and welfare of workers within the state. *See Metropolitan Life*, 471 U.S. at 751, 105 S.Ct. at 2395 (state may require minimum mental health benefits); *Fort Halifax*, 482 U.S. at 19–20, 107 S.Ct. at 2221–22 (state may require severance pay).

UPS argues that § 629 is preempted under the *Garmon* rule because it inhibits employers and employees from resolving disputes through agreements, which undercuts the collective bargaining process and the federal policy of facilitating the private settlement of labor disputes. We conclude, however, that *Garmon* preemption is inapplicable here because the "conduct" that Maine seeks to regulate—execution of agreements providing for payroll deductions as a condition of employment—is not subject to the regulatory jurisdiction of the NLRB. *See Metropolitan Life*, 471 U.S. at 748–49, 105 S.Ct. at 2393–94. Not only does the NLRA fail to refer explicitly to such agreements, but they are different in kind from the types of activities over which the NLRB has jurisdiction. Such an agreement is not a tactic affecting the equality of bargaining power, which may be protected by section 7 of the NLRA or prohibited as unfair by section 8, but it is a device whose validity is a matter of substance to be addressed in the parties' contract. Government regulation of this type of practice properly is analyzed under the *Machinists* doctrine.

In relevant respects, § 629 is substantially similar to the minimum standards statutes at issue in *Metropolitan Life* and *Fort Halifax*. *Metropolitan Life* involved a state law requiring that minimum mental health benefits be provided under certain health insurance policies while *Fort Halifax* concerned a state statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. Like the statutes in those cases, § 629 simply regulates the *substance* of the agreement between the parties and not the bargaining *process*. And like those statutes, section 629 sets what the state believes to be a minimum standard. Maine has prohibited a technique for resolving employer claims against employees that it deems substandard—i.e., below the minimally acceptable level—because of its high risk of unfairness to the employee.[5]

We see no way in which this minimum labor standards law conflicts with federal labor policy. The Court in both *Metropoli-*

---

5. Section 629 presently is titled "Unfair Agreements" and previously was titled "Unfair Wage Agreements." We could find no legislative history explaining the motivation for the statute, which was added to Maine's Employment Practices law in 1935.

*tan Life* and *Fort Halifax* explicitly rejected the argument that a state's establishment of minimum substantive labor standards undercuts collective bargaining and therefore conflicts with the NLRA. The Court emphasized that Congress was not concerned with the particular substantive terms of the bargain struck between employers and employees. Rather,

> [th]e NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment.... No incompatibility exists, therefore, between federal rules designed to restore the equality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with the[ ] general goals of the NLRA.

*Metropolitan Life*, 471 U.S. at 753, 754–55, 105 S.Ct. at 2396, 2397. The Court has further noted that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State," *Fort Halifax*, 482 U.S. at 21, 107 S.Ct. at 2222.

UPS attempts to distinguish this case from *Metropolitan Life* and *Fort Halifax* by arguing that § 629, unlike the statutes in those cases, imposes an impermissible direct restraint on the private resolution of disputes between employers and employees while failing to confer any "substantive" benefit on employees. We disagree on both counts.

First, § 629 does not restrain the private resolution of disputes between employers and employees at a level that matters under federal law. While § 629 limits the range of possible solutions in individual cases of employee wrongdoing, the statute does not inhibit the ability of employers

and employees to bargain collectively over terms and conditions of employment. The statute's impact on the collective bargaining process thus mirrors that of the laws in *Metropolitan Life* and *Fort Halifax:* employees come to the negotiating table with one protection for which they otherwise might have had to bargain. *See Fort Halifax*, 482 U.S. at 21, 107 S.Ct. at 2222. *See also Metropolitan Life*, 471 U.S. at 754–57, 105 S.Ct. at 2396–98. The NLRA does not preempt this type of state "interference" with the employer-employee relationship. *See Metropolitan Life*, 471 U.S. at 756–57, 105 S.Ct. at 2397–98 (" 'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.' ") (quoting *De Canas v. Bica*, 424 U.S. 351, 356, 96 S.Ct. 933, 937, 47 L.Ed.2d 43 (1976)).

Moreover, § 629 does not prohibit *all* voluntary agreements between employers and employees for the reimbursement of employee debts. In our view, it simply bars the use of one method, payroll deductions, for doing so. We recognize that § 629 does not explicitly refer to pay withholding agreements. We believe, however, that the statute's reference to the *return* of *monetary compensation for work* is intended to refer to a direct payment to the employer from one's wages rather than to any payment at all. It is unlikely that the legislature would have chosen these specific words if its purpose was to prohibit employers entirely from securing agreements for the payment of debts caused by an employee's admitted negligence. *Cf. Male v. Acme Markets, Inc.*, 110 N.J.Super. 9, 264 A.2d 245 (1970) (declining to construe New Jersey statute prohibiting wage withholding to bar voluntary reimbursement of funds).[6]

The legislature undoubtedly viewed the payroll deduction as harmful and unfair because it deprives the worker of wages

---

**6.** Thus, § 629 would not foreclose an employee from agreeing, as a condition for reinstatement, to reimburse his employer for damages caused at a specified rate per month—so long as the amount of reimbursement does not come directly out of the employee's paycheck.

Of course, any agreement that required the equivalent of a payroll deduction would be invalid. An employer could not, for example, require an employee to pay $50 per week as a condition of receiving his "full" paycheck. *See Acme Markets*, 110 N.J.Super. at 13, 264 A.2d at 246.

earned before he has had a chance to decide on a given payday how best to allocate his available resources. With a payroll deduction, an employee suffering an unexpected financial crisis loses the flexibility to pay his debt a little late so that he has enough money for that week's food. In addition, if funds are withheld automatically, the employee who seeks to challenge a particular deduction—for example, because he thinks the debt already is repaid—would nevertheless first lose access to his money.

This preservation of financial independence is § 629's substantive benefit. It is true that the advantage to the employee differs from that conferred by the laws in *Metropolitan Life* and *Fort Halifax*, which set quantifiable minimum levels for specific benefits. Section 629's concern, however, is no less a matter of public welfare.[7]

Because § 629 "neither encourage[s] nor discourage[s] the collective-bargaining processes that are the subject of the NLRA," *Metropolitan Life*, 471 U.S. at 755, 105 S.Ct. at 2397, it is "a valid and unexceptional exercise of the [State's] police power." *Id.* at 758, 105 S.Ct. at 2398. The NLRA therefore does not preempt § 629.[8]

## III.

■ Having found § 629 to survive preemption, the district court ruled that the wage withholding agreement was "null and void" and unenforceable against Beckwith.

In its reply brief to us, UPS argues for the first time that only the payroll deduction provision should be invalidated and that the remainder of the agreement should be held enforceable. UPS claims that it has not urged this approach previously because Beckwith had not previously argued that it was only the payroll deduction provision that violated § 629. It apparently has been UPS' assumption that *any* agreement to pay back employment-related losses incurred by employees is barred by the statute if made a condition of employment.

We decline to consider whether the agreement is severable. It was UPS's obligation to argue to the district court that some remedy short of invalidating the agreement would satisfy Maine law. Although its failure to do so stems from mistaken assumptions about the scope of § 629, *see supra* at p. 347,[9] UPS had adequate notice of the theory that the *wage withholding* provision, and not the payback agreement itself, violated Maine law. Beckwith's complaint alleged that "[t]he actions of Defendant *in withholding weekly sums from Plaintiff's pay* are in violation of 26 M.R.S.A. § 629." (Emphasis added.) A letter from Beckwith's lawyer to UPS before the lawsuit was filed referred to the "unlawful character of the policies followed by the company *in connection with pay deductions....*" (Emphasis added.) The district court's opinion also suggests a focus on the payroll deduc-

---

7. Even if our construction of § 629 is wrong, and the legislature intended to prohibit *any* agreement requiring an employee to reimburse his employer for losses as a condition of retaining his job, the law would not be preempted. Such a broad prohibition undoubtedly would reflect the legislature's judgment that employers have assumed the risk of hiring negligent workers, and that they may not shift the burden back onto individual employees who have little ability to resist "voluntary" reimbursement agreements. This sort of provision, like the more limited ban on paycheck deductions, would set a substantive standard of protection for employees. It, too, would have no direct impact on the collective bargaining process other than to eliminate one point on which employers and employees otherwise might negotiate.

8. UPS quotes repeatedly from *Teamsters v. Oliver*, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959), to support its argument that states may

not limit the options available to employers and employees for resolving their disputes. The Supreme Court in *Metropolitan Life* recognized that certain language in *Oliver* supported the notion that states may not pass laws that interfere with the end result of bargaining. The Court nevertheless rejected that principle in *Metropolitan Life*, holding that states *may* limit bargaining options by setting some kinds of minimum employment standards. UPS's reliance on *Oliver* is therefore misplaced.

9. The interpretive leap made by UPS is evident in its Memorandum in Support of Summary Judgment, where the company states that "[b]ecause 26 M.R.S.A. § 629 prohibits an employer *from making payroll deductions,* if an employer seeks to recover damages caused by an employee's negligence, it must file a lawsuit and prove its entitlement to recover by a preponderance of the evidence." (Emphasis added.)

tion element of the agreement: "The facts here do not fit within any of the section 629 exceptions permitting *paycheck deductions* as a condition of employment."

The company was not deceived by Beckwith's arguments, but merely taken unawares. In these circumstances, we see no reason to depart from the well-established principle that issues not raised below will not be considered on appeal. *See United States v. Serrano,* 870 F.2d 1, 17 (1st Cir. 1989); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 893–94 (1st Cir.1979). We therefore affirm the judgment of the district court invalidating the wage withholding agreement.

## IV.

■ Beckwith asserts that success on his § 629 claim entitles him to liquidated damages and attorney's fees under 29 M.R.S.A. § 626–A.[10] The district court, however, held that an employee who prevails in a § 629 case is limited to the remedy specified in that subsection—the return of the amount wrongly withheld from his pay. We are persuaded by the district court's reasoning, and therefore reject Beckwith's claim that that court erred.

The first paragraph of § 626–A, which is titled "Penalties," provides a uniform civil forfeiture penalty for violations of various subsections in Maine's Employment Practices law, all of which deal in some fashion with the payment of wages. The subsections governed by the forfeiture provision are listed by number, and § 629 is among them. The remainder of § 626–A, however, contains no specific reference to any subsection, leaving it open to debate whether the second paragraph, which provides for liquidated damages and attorney's fees, applies to the sections enumerated in the first paragraph.

Two primary factors contributed to the district court's decision that Beckwith is not entitled to the remedies specified in the second paragraph of § 626–A. We shall summarize them:

(1) The first paragraph of § 626–A, which contains the reference to § 629, also mentions, *inter alia,* § 626, which establishes standards for payment of wages to employees who are leaving their jobs. The Maine legislature in 1983 *added* a penalty provision to § 626 that contains the identical liquidated damages and attorney's fee remedies that are contained in the second paragraph of § 626–A. If the second paragraph of § 626–A were intended to apply to every subsection listed in its first paragraph, the 1983 amendment to § 626 would be superfluous. Thus, it appears that § 626–A's second paragraph penalty provision does not apply to each of those subsections listed in the first paragraph. The absence of an amendment to § 629 similar to that made to § 626 suggests that the legislature intended the remedy for § 629 to be the more limited one explicitly provided within that section. This approach is consistent with the principle that a specific remedial provision generally should be given controlling force over a general one contained in another statute that otherwise might provide a remedy. *See Beaulieu v. City of Lewiston,* 440 A.2d 334, 345 (Me. 1982); *Cumberland Farms Northern, Inc. v. Maine Milk Commission,* 428 A.2d 869, 873 (Me.1981).

Construing § 626–A in this manner does not necessarily make the section's second paragraph superfluous. None of the sections listed in the first paragraph other than sections 626 and 629 have their own penalty provisions, and the legislature may have intended the § 626–A remedies to be available when, and if, appropriate for violations of those sections. For example, an

10. 26 M.R.S.A. § 626–A provides in pertinent part:
    Whoever violates any of the provisions of sections 621 to 623 or section 626, 628 or 629 shall be subject to a forfeiture of not less than $100 nor more than $500 for each violation.
    Any employer shall be liable to the employee or employees for the amount of unpaid wages. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, a reasonable rate of interest, an additional amount equal to twice the amount of such wages as liquidated damages and costs of suit including a reasonable attorney's fee.

employer who violates the equal pay requirements in 26 M.R.S.A. § 628 could be required to pay the affected employees liquidated damages and attorney's fees as provided by § 626–A.[11]

(2) The district court added to this legislative history an analysis of the statutory language. It noted that the second paragraph of § 626–A refers to claims for "unpaid wages" while the relevant portion of § 629 contemplates "a scenario in which compensation *paid* to the employee is *returned* to the employer, as a condition of employment." (Emphasis in original.) The court emphasized the difference between an employer failing to pay an employee for work performed and an employer who requires payment *to* the employer out of earned wages. The court felt that if the legislature had meant to include claims for returned wages, as well as unpaid wages, it would have phrased the second paragraph differently. The text of § 629 does, after all, distinguish between wages not paid and compensation *returned.*[12]

Beckwith argues that the district court's reasoning results in neither a sufficient remedy for the employee who suffers a § 629 violation nor a sufficient penalty against the employer committing it. We agree that there is some incongruity in the district court's otherwise sensible reading of the statutory scheme in that the remedy for an employee whose wages are improperly withheld is more limited than that for employees subject to all other unfair wage practices listed in the first paragraph of § 626–A. Yet, as UPS argues, the legislature may have concluded that violations of § 629 that involve employee *agreements* for payroll deductions are not as wrongful

as "unpaid wage" violations. Moreover, employers are subject to the civil forfeiture penalty contained in the first paragraph of § 626–A, which should serve as some deterrent against truly unfair wage withholding agreements.

Thus, we cannot say that public policy factors negate the district court's resolution of this statutory puzzle. This is a case where no reading of a statutory scheme is completely satisfactory. The district court's reading is supported by logic. Particularly in such a circumstance is that court entitled to some deference on matters of state law arising out of the state in which it sits. *See Croteau v. Olin Corp.,* 884 F.2d 45, 46 (1st Cir.1989); *Dennis v. Rhode Island Hospital Trust National Bank,* 744 F.2d 893, 896 (1st Cir.1984). We therefore affirm its denial of Beckwith's request for liquidated damages and attorney's fees under § 626–A.

## V.

To sum up briefly, we hold that Maine's "Unfair Agreements" provision, 26 M.R.S.A. § 629, is a valid exercise of the state's police power and is not preempted by federal labor law. An employer who violates that law by withholding wages from its employee's paycheck is not subject to penalties contained in the second paragraph of 26 M.R.S.A. § 626–A, but must reimburse its employee the full amount withheld from pay.

*Affirmed. No costs.*

---

**11.** We recognize that if this interpretation is correct it becomes unclear why the legislature in 1983 felt it needed to insert a separate penalty provision into § 626 rather than allowing the § 626–A remedy to apply by default to § 626 as well. It could be that the legislature does not, in fact, anticipate "unpaid wage" claims under any of the other provisions. In that event, the legislature simply may have neglected to delete the second paragraph of § 626–A when it added the remedy portion to § 626.

**12.** The district court's reasoning obviously applies only to the part of § 629 that governs agreements for the return of wages and not to

the disjunctive provision concerning "work *without* monetary compensation" (emphasis added). It may be that violations of this latter aspect of § 629 would involve "unpaid wages" and that such violations perhaps should be subject to the remedies in the second paragraph of § 626–A. Interestingly, the remedy provision in § 629 by its terms is limited to instances in which there was an amount *returned* to the employer. We offer no opinion on the applicability of § 626–A to this type of § 629 violation, but note that the issue remains unresolved by our decision.