278 N.J. Super. 208 (1994)
650 A.2d 848
MARGUERITE BROWN, PLAINTIFF,
v.
UNITED CEREBRAL PALSY/ATLANTIC & CAPE MAY, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Atlantic County.
Decided August 1, 1994.
*210 Diane L. Newman, for plaintiff.
Jeffrey D. Light, for defendant.
SELTZER, J.S.C.
This motion implicates the extent to which New Jersey recognizes an employer's claim against an employee for damages resulting from the employee's job performance. It requires a resolution of what one federal court has termed the "difficult issue of determining current New Jersey law." Dome Petro., Ltd. v. Employers Mut. Liab. Ins. Co., 767 F.2d 43, 48 (3rd Cir.1985).
*211 The dispute between these parties was initiated by plaintiff's suit alleging that she had been wrongfully terminated from her position as Executive Director of defendant. Defendant's answer denied any wrongful termination and affirmatively advanced a claim for damages resulting from a breach of contract and negligence. Defendant moved to dismiss the counterclaim for failure to state a claim upon which relief may be granted, asserting that New Jersey does not recognize an employer's cause of action against an employee for either negligent performance of duties or for breach of an implied contractual provision to perform non-negligently.
Prior to 1961, New Jersey appeared to accept "as a fundamental rule in the law of agency that an agent or employee is generally liable to his principal or employer for loss sustained by the latter due to the former's negligence or defalcation." Male v. Acme Markets, Inc., 110 N.J. Super. 9, 12, 264 A.2d 245 (App.Div. 1970). See also Marchitto v. Central R.R. Co., 9 N.J. 456, 469, 88 A.2d 851 (1952); Schustrin v. Globe Indem. Co., 44 N.J. Super. 462, 466, 130 A.2d 897 (App.Div. 1957); Marano v. Sabbio, 26 N.J. Super. 201, 97 A.2d 732 (App.Div. 1953). This is the general rule which appears to be recognized universally. Restatement (Second) of Agency § 379 (1958); Annotation, Servant's Tort Liability to Master, 110 A.L.R. 831 (1937); Annotation, Liability Insurer's Subrogation Rights, 53 A.L.R.3d. 621 (1973).
In 1961, the New Jersey Supreme Court suggested that such a rule was "anachronistic" insofar as it permitted an employer, liable to a third party for the negligence of an employee under the doctrine of respondent superior, to recoup the loss from the negligent employee. Eule v. Eule Motor Sales, 34 N.J. 537, 540, 170 A.2d 241 (1961). The Eule Court, quite clearly, if not explicitly, rejected the general rule, at least in the context of liability incurred as the result of negligence in operating a motor vehicle. It opined that the liability of the employer to third parties is derived from the doctrine of respondent superior which in turn "rests on a public policy that the employer bear the burden as an *212 expense of the operation he expends through the employment of others." The employee should not, therefore, be required to bear that cost by way of indemnification to the employer.[1]
That pronouncement, although dicta, is entitled to great, if not conclusive weight. State v. Wein, 162 N.J. Super. 159, 163, 392 A.2d 607 (App.Div. 1978), rev'd on other grounds, 80 N.J. 491, 404 A.2d 302 (1979). Where dicta appears to contravene a previously announced rule, a lower court is obligated to determine which rule would be adopted as a result of an appeal. State v. Dolton, 146 N.J. Super. 111, 115, 369 A.2d 17 (App.Div. 1977). Although the Supreme Court has not addressed this issue since Eule was decided, I have little doubt that if it were to do so it would adopt the language it used in 1961.
Such a rule is consistent with the approach that New Jersey has taken in requiring a business entity to assume the costs attendant on the conduct of that business. It is analogous to our rule prohibiting an employer from seeking indemnification from a co-employee who negligently injures an employee to whom the employer is liable under our workers' compensation laws. N.J.S.A. 34:15-8. Cf. Landrigan v. Celotex Corp., 127 N.J. 404, 605 A.2d 1079 (1992) (imposing, as a cost of business, products liability responsibility on a manufacturer who produced products which were considered safe at the time but thereafter determined to be unsafe).
This rationale suggests that the Eule rejection of employee liability to an employer for indemnification of third party claims should not be limited to automobile negligence. An employer's business necessarily and foreseeably will involve acts of negligence on the part of an employee. As a matter of policy then, the employer, not the negligent employee, should bear the cost of loss occasioned in the conduct of the employer's business. Accordingly, *213 I have no hesitation in determining that our law prohibits an employer from recouping from an employee any sums the employer may be required to pay to a third party as a result of the employee's negligence.[2] That portion of the counterclaim which alleges damages within this class fails to state a cause of action under our law and is therefore dismissed. I turn now to that portion of the counterclaim which alleges damages suffered by the business unrelated to third party claims.
It is not clear why corporate losses sustained as a result of a third party claim should be treated differently from losses sustained as the result of an employee's negligent injury to corporate property without third party involvement. Nevertheless, the cases treat the situations differently and it would be improper for a trial court to anticipate a change in the law without a clear indication from an appellate court that such a change is appropriate. Goddard v. Orthopedic Consultant Assoc., P.A., 177 N.J. Super. 319, 426 A.2d 542 (App.Div. 1981).
The latest appellate pronouncement is Fried v. Aftec, Inc., 246 N.J. Super. 245, 587 A.2d 290 (App.Div. 1991). Plaintiff, relies on Fried to support her claim that New Jersey does not recognize a cause of action based on poor performance. That case, like this, involved a discharged management level employee whose wrongful discharge suit was met by a counterclaim alleging corporate losses resulting from the employee's breach of contract and/or negligence.
In affirming the dismissal of the counterclaim, the Appellate Division, after noting that claims based on negligence and breach of contract must be treated similarly, held that:

*214 [A] contract for commercial employment requires nothing more than reasonable diligence ("standard care") on behalf of the employee to perform its terms. See Restatement (Second) of Agency § 379(1) (1958).
[Id. at 258, 587 A.2d 290.]
This language suggests that a departure from a standard of care of reasonable diligence will impose liability. This is the quintessential definition of negligence. The court, however, further held that:
[A]n employee whose best efforts resulted in poor performance, causing a loss of profits, does not become liable for such losses in a breach of contract action.
[Ibid.]
This sentence may be read to imply that a performance not reaching a level of due diligence will not impose liability if it is nevertheless the actor's best effort. Apparently negligence (the failure to exercise due diligence) is not enough to impose liability.
Not only does this latter formulation appear to contradict the sentence it immediately follows, it is also diametrically opposed to the decision in Male v. Acme Markets, supra. Male involved the ability of a corporation to recover from its employee damages sustained as a result of a shortage in the employee's cash drawer. The Appellate Division, after noting the general rule of an employee's liability to his employer, held that the employee was liable for the losses (which could only have occurred as a result of negligence or defalcation).
While Male clearly says that an employer may recover from a negligent employee damage to the employer from that negligence, Fried is not nearly so clear. The same ambiguity is contained in the cases on which Fried relies.
Carmichael v. Lavengood, 112 Ind. App. 144, 44 N.E.2d. 177, 180 (1942) is cited for the proposition that:
[I]n the absence of an express agreement by which the agent expressly agrees to be so bound, the agent is not an insurer of the success of his undertaking and he does not guarantee his principal against incidental losses, and if he acts with good faith and with due care, he is not liable for losses which result from a mere mistake.
*215 This language is confusing because it mixes the concepts of requiring good faith and due care with the suggestion that a "mere mistake" (which is normally the result of a failure to exercise due care) will not impose liability when a mistake typically evidences a want of due care. The court then goes on to state:
It is the duty of an agent in all transactions involving the subject matter of the agency to act with the utmost loyalty and good faith in the furtherance of the interest of his principal. He must exercise ordinary care in the performance of his duties, and if he negligently fails to do so he is liable to his principal for resultant damages.
[Ibid.]
This language explicitly admits the viability of an employer's action against its employee and seems to suggest that negligence is a sufficient basis for such a suit.
Similarly, the Fried court referenced the 1970 California Supreme Court decision in United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal.3d 586, 83 Cal. Rptr. 418, 422, 463 P.2d. 770, 774 (Sup.Ct. 1970), for the proposition that "liability (of an employee) is not incurred by a mere error of judgment in the exercise of discretion unless the error is based on want of due care or diligence." Presumably, liability is incurred if the error is based on want of due care or (due) diligence.
The apparent difficulty may be resolved by recognizing that, at least on a level where the employee is exercising a degree of judgmental discretion, there is a class of decisions or actions which may ultimately be wrong but which can be made without negligence. So long as the action has some rational basis (that is could have been made by someone exercising reasonable care) no liability can attach even if the decision is ultimately proven in the result to be wrong. That is why an error in judgment does not give rise to liability but a negligent decision (one which no reasonable person could have made under the circumstances) does.
It also explains why a cashier is responsible to the employer for shortages in a cash drawer, as in Male, but an executive is not responsible for losses incurred under their stewardship as in Fried. In Fried, in fact, the evidence demonstrated that the *216 plaintiff failed to perform in an acceptable manner and that the business generated a cash deficiency during the period in question. There was no proof that the performance was negligent in the sense that I have just discussed. Indeed, there was no proof that the performance, even if negligent, proximately caused the damage alleged. In Male, the cashier was the only person involved in making change and there is no question that the shortage was attributable to negligence (in the ordinary sense because no judgment was involved) or dishonesty.
This analysis is not new. It is the same rule which affords a sphere of protection for discretionary decisions to corporate managers, Sarner v. Sarner, 62 N.J. Super. 41, 162 A.2d 117 (App.Div. 1960) (liability imposed only for decisions reached incompetently), condominium associations, Courts at Beachgate v. Bird, 226 N.J. Super. 631, 545 A.2d 243 (Ch. 1988) (liability imposed only for unconscionable decisions), and physicians, Schueler v. Strelinger, 43 N.J. 330, 204 A.2d 577 (1964) (physicians must be allowed wide range in exercise of judgment).
Moreover, this result is not contrary to Section 379 of the Restatement (Second) of Agency which recognizes liability of an employee predicated on negligence because negligence, properly defined, remains a basis for liability in New Jersey. The concept of negligence, however, when dealing with the propriety of discretionary decisions, involves an area in which mistakes are not negligent unless no reasonable person would have made them (i.e., they were unconscionable). Accordingly, a cause of action is stated against an employee if it alleges negligence resulting in loss to the employer occasioned other than by third party claims. If the negligence relates to discretionary activity, it must be shown to be negligent in the sense that it had no rational basis.
I note in passing that this analysis does not involve the ability of a plaintiff to prove damages. It is clear that United Cerebral Palsy must show more than that losses occurred during Brown's stewardship  even if that stewardship was negligent. As Fried notes, no New Jersey case holds that an inept employee is *217 responsible for general lost profits. Fried, supra, 246 N.J. Super. at 260 n. 8, 587 A.2d 290. I take that to mean that the specific act of negligence must be causally related to a specific loss. Proximate cause of damage cannot be demonstrated by showing negligence and poor financial conditions. Because so many other factors may account for poor economic performance, a suing employer must demonstrate a specific causal link. This distinction was recognized as early as 1911. In discussing this issue, the Iowa Supreme Court has held that a showing that a discharged employee failed to get results, was insufficient to impose liability:
It takes rather a strong showing in such a case to hold a servant or employee liable for failure of an enterprise, and even with failure shown courts are reluctant to charge all the results to the employee. So many elements enter into the question of successful management and profits from any venture that courts naturally are very conservative when it comes to charging results to an employee.
[Weymer v. Belleplaine Broom Co., 151 Iowa 541, 132 N.W. 27 (Iowa Sup.Ct. 1911).]
Indeed, Fried, in one sense, may be read as holding only that the proof was insufficient to demonstrate liability.
All that, however, is a matter of proof and I am concerned only with whether a cause of action has been made out, not whether it can be proven. Defendant's counterclaim can be read to set out such a cause of action and to the extent it does so regardless of the difficulty of proof (or even the likelihood of surviving a summary judgment motion) the application to dismiss must be denied. Printing Mart v. Sharp Elec., 116 N.J. 739, 563 A.2d 31 (1989).
In sum, the counterclaim does not set out a viable cause of action insofar as it alleges damages resulting from the claims of third parties but does set out a claim to the extent it alleges that Ms. Brown otherwise performed in a manner which no reasonable executive would act resulting in specifically identifiable damages. Accordingly, the motion to dismiss is granted in part and denied in part.
NOTES
[1] This analysis has at least some academic support, although it has not attracted any judicial comment. See Steffen, The Employer's "Indemnity" Action, 23 U.Chi.L.Rev. 465 (1958).
[2] Obviously, this discussion relates only to negligence occurring within the scope of the employee's employment and does not apply to intentional acts. Moreover, I do not read Eule to extend to circumstances beyond that of employer-employee relationships. Although an employer-employee relationship is one class of principal-agent relationships, it has manifest characteristics that are not present in other classes.